## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

MANFRED ELANGWE,       *
                           *
       Petitioner,       *
                           *
v.                         *       No. 15-CV-12595-IT
                           *
STEVEN O'BRIEN,      *
                           *
       Respondent.    *

## MEMORANDUM & ORDER

September 7, 2016

TALWANI, D.J.

Petitioner Manfred Elangwe's pro se amended petition for a writ of habeas corpus contains sixteen separate bases for relief. Am. Pet. [#20]. Respondent Steven O'Brien has moved to dismiss the amended petition in its entirety, arguing that at least thirteen of Petitioner's claims are unexhausted or based solely on state law. Mot. Dismiss [#24]. In response, Petitioner requests to stay his petition so that he can return to state court to exhaust his claims. Mot. Stay Abeyance [#26]. For the reasons set forth below, Petitioner's claims do not warrant a stay. Accordingly, the court will grant the Motion to Dismiss [#24] unless Petitioner dismisses the unexhausted claims and proceeds only on the merits of the exhausted claims.

## I.     BACKGROUND

### a.   Procedural Background

Petitioner's first trial ended in a mistrial after the jury was unable to reach a verdict on any of the charges. Commonwealth v. Elangwe, 7 N.E. 3d 1102, 1105 n. 3 (Mass App. Ct. 2014). After a second jury trial, Petitioner was convicted of rape of Mary

Smith ("Smith"),[1] of assault and battery as a lesser included offence of Susan Jones

("Jones"), and accosting and annoying a person of the opposite sex (also of Jones). Id. at

1105. Petitioner appealed his conviction and filed a motion for new trial. Those two

actions were consolidated before the Massachusetts Appeals Court, which affirmed both

the conviction and the denial of the motion for new trial. Id. Thereafter, Defendant filed

an Application for Leave to Obtain Further Appellate Review ("ALOFAR") with the

Supreme Judicial Court ("SJC"). The SJC summarily denied the appeal on June 11, 2014.

Commonwealth v. Elangwe, 10 N.E.3d 1134 (Mass. 2014). One year later, Petitioner

filed a writ of habeas corpus with this court. Pet. Writ Habeas Corpus [#1]. Petitioner

sought to amend his petition, which the court allowed. [#19].

     b.  Factual Background

The following facts are taken from the Massachusetts Appeals Court decision. [2]

> The victims lived at the Hildebrand Family Self–Help Center, a
> shelter in Cambridge, during the summer of 2004. The shelter had
> one "house manager" on site at any one time. The defendant was a
> house manager during the victims' stay. The defendant's direct
> supervisor was Lorraine D'Eon, the director of program operations
> for the shelter.
>
> a. *Smith.* One day in July of 2004, after finishing her chores, Smith
> sat down on a sofa in the common area near where the defendant
> was sitting. The defendant was the only other person in the
> common area. The defendant suddenly approached Smith and

---

[1] Consistent with the practice of the Massachusetts Appeals Court, pseudonyms are used
for the victims.

[2] Petitioner has not challenged the factual findings of the Massachusetts Appeals Court,
and therefore the facts are described as the Massachusetts Appeals Court found them.
Yeboah-Safah v. Ficco, 556 F.3d 53, 62 (1st Cir. 2009) (court takes the facts as recounted
by the state court). The court must accept the state court findings of fact unless convinced
"by clear and convincing evidence, that they are in error." Lynch v. Ficco, 438 F.3d 35,
39 (1st Cir. 2006); McCambridge v. Hall, 303 F.3d 24, 26 (1st Cir.2002) (en banc) (citing
28 U.S.C. § 2254(e)(1)).

forced her to have sexual intercourse with him on the sofa. After the defendant finished, he told Smith that no one would believe her because she was homeless. Smith discarded her clothes and did not photograph or document her injuries.

Smith then went to the residence of her children's father, Dan Emde. While there, she took a bath and used two douches that she purchased on the way.[3] Although Smith sounded upset talking to Emde, she did not tell him about the rape. Smith did not tell anyone about the rape at that time because she was afraid she would be evicted from the shelter.

A few weeks later, Smith had another encounter with the defendant that led her to believe he would once again force her to have sexual intercourse with him. As a result, Smith told a staff member about the rape. The staff member arranged a meeting with D'Eon and other shelter staff to report the incident. The police were not involved at that time but a few weeks after the meeting with the shelter staff, Smith reported the incident to the Cambridge police.

b. *Jones.* One day in August of 2003, Jones asked the defendant to borrow a screwdriver. When the defendant brought it up the stairs to her, he grabbed her upper thigh with his hands and said, "Wow. These are getting big." Jones said, "Enough," loud enough to make her daughter cry. Later that day, the defendant attempted to grab her arm as she walked past him, which prompted her to report the incident to a staff member. She too met with D'Eon and other shelter staff about the matter. Jones reported the incident to police after she saw the defendant still employed at the shelter the following weekend.

c. *Trial testimony regarding Smith's civil suit.* After Smith and Emde testified at trial, the Commonwealth stated its intention to call D'Eon as a hostile witness.[4] Defense counsel contacted D'Eon and arranged to meet with her, apparently for the first time, on the Friday before D'Eon's scheduled testimony on the following Monday. At that meeting, defense counsel learned that Smith had filed a civil action for damages arising from the alleged rape. Smith had brought suit against the shelter, the defendant, and the personnel agency that arranged the defendant's temporary

---

[3] The Massachusetts Appeals Court inserted a footnote which stated: "Smith and Emde both testified that their relationship had ended before the time of the incident."
[4] The Massachusetts Appeals Court inserted a footnote which stated: "The judge permitted the prosecutor to do so based on D'Eon's failure, in the first trial, to follow the court's instructions regarding permissible testimony."

employment at the shelter. Prior to the resumption of the trial on Monday, defense counsel checked the court docket and confirmed the existence of the civil suit. According to the docket, Smith had filed the suit on behalf of herself and her minor children within days of the completion of the first trial and approximately nine months before the start of the second trial.

Counsel, however, did not disclose this information to the judge or to the prosecutor. Despite her knowledge of the civil suit, however, she agreed to a stipulation to be read during D'Eon's testimony to the effect that the statute of limitations had passed and that no suit had been filed by any of the women who alleged sexual misconduct against the defendant.[5] Defense counsel also failed to mention the suit when the prosecutor indicated to the judge that she intended to inquire of D'Eon whether Smith had filed a civil suit. To the apparent surprise of the prosecutor, D'Eon replied affirmatively when that question was put to her. At the prosecutor's request, the judge excused the jury to pursue the matter further with counsel.

The prosecutor professed ignorance of the suit, explaining that she had asked Smith prior to the second trial whether a civil suit had been filed, and that Smith had responded that "she has no knowledge of whether or not a civil suit is pending." Defense counsel, perhaps sensing a tactical advantage in the surprise testimony, argued that the prosecutor had not done "her preparation" and that the Commonwealth should not be allowed to escape the possibly negative consequences of its late discovery. The judge delayed further examination concerning the suit until she could verify through court documents that the litigation actually was pending.[6] With confirmation that the suit was then in fact pending in the Superior Court, the judge permitted D'Eon to testify to that fact.

Neither the Commonwealth nor the defendant recalled Smith or Emde for inquiry about the pending suit. Instead, both parties relied on their closing arguments to portray the suit in the light most favorable to their position on the defendant's guilt. The defendant argued that Smith was motivated by bias, given the

---

[5] The Massachusetts Appeals Court inserted a footnote which stated: "We do not condone and find reprehensible defense counsel's agreement to stipulate to a fact she knew to be false."

[6] The Massachusetts Appeals Court inserted a footnote which stated: "The judge's caution was due in part to D'Eon's reference to the suit as a 'letter of intent.'"

potential for financial gain from a conviction on the charges. In her closing, the prosecutor rebutted the suggestion of bias with reference to evidence that Smith had delayed reporting the incident and that even then, she had been reluctant to report the incident to the police.

d. *Posttrial discovery of new evidence.* After the guilty verdict, Smith's counsel in the civil suit filed documents in support of her motion for assessment of damages on a default judgment that had entered earlier against the defendant.[7] These documents consisted largely of treatment records for psychiatric injuries attributed to the rape, including posttraumatic stress disorder and depression. Of most significance to the defendant, the records also contained notations that Smith had been sexually abused in the past and that she confused these events with her allegations against the defendant. Statements by Smith to her medical and mental health providers also called into question the suggestion during the trial that she and Emde were permanently estranged, a factor relied on by the Commonwealth to bolster his credibility as a corroborating witness.

Elangwe, 7 N.E.3d at 1105.

II.     STANDARD

Under the Antiterrorism and Effect Death Penalty Act ("AEDPA"), a habeas petitioner must "exhaust[] the remedies in the courts for the State" before seeking relief on a given claim in federal court. 28 U.S.C. § 2254(b)(1)(A); see also Sanchez v. Roden, 753 F.3d 279, 294 (1st Cir. 2014) (exhaustion requirement codified by AEDPA). The exhaustion requirement is based on the interests of comity and federalism, as it would be

---

[7] The Massachusetts Appeals Court inserted a footnote which stated: "The record includes an affidavit from the defendant, filed in support of his new trial motion, attesting that he had never been served with a copy of the civil complaint. He averred that after his arrest, he had lost his job, had been forced to move from his prior address in Malden, 'and [had] stayed ... at three different addresses in Somerville.' Service of the civil complaint was made on September 28, 2007, more than two years after his arraignment in Superior Court on July 28, 2005. A default judgment entered against the defendant in the civil case based on the return of service, which noted that the defendant had been served at his last and usual address in Somerville."

"unseemly in our dual system of government for a federal district court to upset a state court conviction without an opportunity to the state courts to correct a constitutional violation." Rhines v. Weber, 544 U.S. 269, 274 (2005) (quoting Rose v. Lundy, 455 U.S. 509, 518 (1982)) (further citation omitted). To exhaust, a petitioner must have presented the "federal claim fairly and recognizably" to the state court. Clements v. Maloney, 485 F.3d 158, 162 (1st Cir. 2007). In other words, the federal claim must have been alleged in such a way "as to make it probable that a reasonably jurist would have been alerted to the existence of the federal question." Id. (quoting Casella v. Clemons, 207 F.3d 18, 20 (1st Cir. 2000) (further citation omitted). Courts may not adjudicate mixed petitions; petitions that contain both exhausted and unexhausted claims must be dismissed. Rhines, 544 U.S. at 273.

The Supreme Court has endorsed a stay and abeyance procedure whereby district courts can stay a mixed petition and hold it in abeyance while the petitioner returns to state court to exhaust the previously unexhausted claims. Rhines, 544 U.S. at 277. However, a stay is available only in limited circumstances, so as not to "undermine Congress' design in AEDPA to encourage finality in criminal proceedings and to streamline the federal habeas process." Josselyn v Dennehy, 475 F.3d 1, 4 (1st Cir. 2007) (citing Rhines, 544 U.S. at 277). Stay and abeyance is appropriate if "the petitioner had good cause for his failure to exhaust, his unexhausted claims are potentially meritorious, and there is no indication that the petitioner engaged in intentionally dilatory litigation tactics." Rhines, 544 U.S. at 278. All three factors – good cause, merit, and the absence of intentional delay – must be satisfied for a district court to grant a stay. Id. at 277-78.

III.     ANALYSIS

Petitioner provides the following basis for his request to stay the proceedings: "The petitioner, an African immigrant, pro se and unsophisticated in English and American jurisprudence set forth four grounds for relief, with each ground having various subparts[,] totaling sixteen claims for relief, thirteen of which were not properly exhausted in the State Court. Accordingly, petitioner seeks leave to stay and abey the instant petition so as to permit exhaustion of the thirteen unexhausted claims as enunciated by the First Circuit." Pet.'s Mot. Stay Abeyance 3 [#26]. Petitioner provides no further support for his request to stay the case.

While the requirement to show good cause may be applied more loosely with pro se petitioners, pro se status, without more, does not constitute good cause warranting a stay and abeyance, particularly where petitioner was represented by counsel throughout the state-court proceedings. Josselyn, 475 F.3d at 5 n. 3 (noting concerns about unwary pro se petitioners being trapped by the good cause requirement but finding that such concerns were not implicated where petitioner had been represented by counsel during the state-court proceedings) (citing Rhines, 544 U.S. at 279 (Stevens, J. concurring)); see Womack v. Saba, 2012 WL 685888 at *3 (D.Mass. March 1, 2012) (pro se status does not constitute good cause). A decision by an attorney "to omit some claims from the ALOFAR cannot amount to good cause" for a stay. Clements, 485 F.3d at 170. When counsel focused on some issues to the exclusion of others, there is a strong presumption that it was done for "tactical reasons rather than through sheer neglect." Knight v. Spencer, 447 F.3d 6, 17 (1st Cir.2006) (quoting Yarborough v. Gentry, 540 U.S. 1, 5 (2003)).

Here, Petitioner has not shown good cause as to why his claims were not exhausted in the state court, and a stay is not warranted. Rhines, 544 U.S. at 277 ("stay and abeyance is only appropriate when the district court determines there was good cause for the petitioner's failure to exhaust his claims in state court."); Santana v. Ryan, 2015 WL 4576913, *3 (D.Mass. July 30, 2015) ("inability to show good cause, by itself, precludes a stay."); Sullivan v. Saba, 840 F. Supp. 2d 429, 437 (D.Mass. 2012) (although claims were potentially meritorious, the lack of good cause "makes a stay and abeyance inappropriate."). Petitioner's pro se status is not enough to warrant a stay, and under any interpretation of the Rhines good cause requirement, Petitioner has not made a sufficient showing. The Motion for Stay and Abeyance [#26] is therefore DENIED.

## IV.   CLAIMS THAT ARE EXHAUSTED

Although Petitioner concedes that many of his claims for relief are unexhausted, he does not identify the claims that he believes are exhausted. Mot. Stay Abeyance 3 [#26]. To be exhausted the claims must have been presented in the ALOFAR in a way that a reasonable jurist would have recognized the existence of the federal question. Casella, 207 F.3d at 20. It is not enough for Petitioner to have "recited the facts underlying a state claim, where those facts might support either a federal or a state claim." Sanchez, 753 F.3d at 294 (quoting Clements, 485 F.3d at 162).

Petitioner's ineffective assistance of counsel claims are directly addressed in just one sentence in the ALOFAR: "If trial defense counsel is appropriately deemed at fault for not discovering the impeachment materials, the resulting harm was that described in Strickland v. Washington, 466 U.S. 668 (1984) as establishing constitutionally inadequate counsel." ALOFAR 19 [#25-1]. As argued in the ALOFAR, the files from the

civil lawsuit would have allowed Petitioner to impeach Dan Emde ("Emde"). Petitioner

argued that impeachment of Emde was critical to the defense because "the jury did not

find Smith credible as to any of her allegations which did not receive corroboration by

Emde," and "at the first trial, without the Emde testimony, the jury did not convict the

defendant of any of the crimes alleged by either Smith or Jones." ALOFAR 18 [#25-1].

The ALOFAR argued that earlier discovery of the civil case would have allowed Emde to

be impeached based on his financial motivation to lie, the fact that he failed to testify at

the first trial despite having been present in the courtroom, and based on his false

statements regarding his ongoing relationship as the domestic partner of Smith. ALOFAR

17 [#25-1]. Per the ALOFAR, this impeachment material could have been available if

Petitioner's trial counsel had not been ineffective.

Petitioner also argued that the files from the civil case could have allowed him to

undermine Smith's testimony. Trial counsel's failure to discover the civil case earlier

allegedly caused prejudice to Petitioner because documents in that case contained a

clinician's observation that "Smith confused her present allegations with previous

incidents of sexual molestation, and that she had required prolonged coaching by

clinicians in preparation for trial." ALOFAR 19 [#25-1]. The ALOFAR notes that these

matters "cast real doubt on the justice of the conviction." ALOFAR 19 [#25-1].

Respondent concedes that Petitioner's ineffective assistance of counsel claim

listed as Ground One Claim (a), the failure to investigate the civil case, has been

exhausted. Mot. Dismiss 18 [#25]. However, the court finds that all three of Petitioner's

claims related to the failure of defense counsel to discover and investigate the civil case

are exhausted.[8] Consequently, the following claims may proceed: Ground One: (a) Trial defense counsel failed to investigate the civil lawsuit; (b) Trial defense counsel failed to request a continuance once she discovered the civil suit in order to investigate the civil suit and its particulars; (c) Trial defense counsel failed to impeach Smith and her boyfriend's testimony who have already testified before defense counsel knew of the civil suit. Am. Pet. [#20]. Petitioner's other allegations relating to trial counsel's alleged ineffectiveness were not exhausted in state court, and Petitioner is barred from raising them in his § 2254 petition.

The ALOFAR also contains a Sixth Amendment claim to cross-examination. The claim refers to the trial judge's decision to exclude evidence that Jones had "motive to fabricate her charges against the defendant." ALOFAR 20 [#25-1]. According to Petitioner's ALOFAR, the Sixth Amendment right "includes the right to bring to the jury's attention circumstances 'which might lead the jury to find that the witness is under an 'influence to prevaricate,' . . . and under the Sixth Amendment, it is the jury which is entrusted to 'appropriately draw inferences relating to the reliability of the witness.'" ALOFAR 20 [25-1]. The ALOFAR argued that Jones' son had caused damage to the plumbing and electrical systems at the shelter, and that Jones therefore had a reason to make false allegations against the defendant. The trial judge ruled that this impeachment evidence was irrelevant. ALOFAR 26 [#25-1]. According to the ALOFAR, exclusion by the trial court of this impeachment evidence violated Petitioner's Sixth Amendment right

---

[8] The Supreme Court has instructed courts to read pro se petitions liberally, and therefore the court finds that all three of the claims that stem from the alleged prejudice caused by the failure to discover the civil case earlier are exhausted. Erickson v. Pardus, 551 U.S. 89, 94 (2007) (per curiam) ("A document filed pro se is 'to be liberally construed,' and 'a pro se complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers.'") (quoting Estelle v. Gamble, 429 U.S. 97, 106 (1976) (internal citations omitted).

to confront the witness against him. Citing <u>Davis v. Alaska</u>, 415 U.S. 308, 316, 318 (1974) Petitioner argued that it was the jury's duty "as the sole triers of fact and credibility" to draw inferences relating to the credibility of a witness, and the judge's ruling denied him his Sixth Amendment right to confront Jones. ALOFAR 20 [#25-1].

Respondent concedes that this Sixth Amendment argument was appropriately exhausted. Mot. Dismiss 18 [#25]. Accordingly, the following claims may proceed: Ground Three (a) The exclusion of Jones' testimony through judicial rulings upon the prosecutor's motion in limine was in error; and, (b) The ruling by the judge that the impeachment of Jones' credibility was irrelevant was error. Am. Pet. [#20].

As to the other claims in Petitioner's <u>Amended Petition</u>, "[w]e have a long-standing rule that claims omitted entirely from an ALOFAR cannot be exhausted." <u>Clements</u>, 485 F.3d at 170. None of Petitioner's other claims raised federal constitutional questions in such a manner as to alert the state court to the federal question. Therefore Petitioner may not proceed on the other claims in his Amended Petition. Petitioner must either dismiss the unexhausted claims, or the court will grant Respondent's <u>Motion to Dismiss</u>. [#24]. Petitioner is advised that the statute of limitations for filing a new § 2254 petition has passed. Should the <u>Motion to Dismiss</u> be granted, Petitioner will likely be foreclosed from refiling a new petition.

## IV. CONCLUSION

For the foregoing reasons, Petitioner's <u>Motion for Stay and Abeyance</u> [#26] is DENIED. Respondent's <u>Motion to Dismiss</u> [#24] will be granted unless, on or before

September 28, 2016, petitioner files a request to dismiss the unexhausted claims in his

petition and proceed on the merits of the exhausted claims. SO ORDERED.


Date: September 7, 2016                                  /s/ Indira Talwani
                                                        United States District Court